May it please the Court, my name is Davina Chen and I represent the appellant Paul Phillips. This appeal, your honors, is about due process and fundamental fairness. Mr. Phillips was found to be in violation of his supervised release based on his agreements and admissions, but the problem is he never agreed to anything and never admitted to anything. Then he was sentenced to 11 months imprisonment and supervised release to follow based on what at most could be construed as miscommunications with his probation officer, and the probation officer was at least in part to blame for that miscommunication. My client, Mr. Phillips, has been in custody for five months already, your honors, since October. This Court should vacate the district court's order and order him released forthwith and remand to the district court to a different judge for de novo proceedings. Mr. Chen. Yes. Didn't Mr. Phillips' attorney submit at the sentencing on the basis of the probation letter of September 7, 2004? Judge Bea, I believe that probably the word submit was a poor choice of words of trial counsel. However, it was clear. Well, wait a minute now. Was there a – what is – let's take a look at the transcript. Do you have the transcript in front of you? Yes, Your Honor. Your Honor, if I may, let me just offer the Court – offer the Court, all right? With regard to the denial, the denial being, in effect, a not guilty plea to the violation of supervised release, it is not our intent to ask to cross-examine the probation officer. It is our intent to submit on what has been submitted and argued, past tense argued, as to why we believe he's not in violation. To me, that indicates that counsel for Mr. Phillips, Mr. Garcia, is saying, I'm not going to call Mr. Garcia. I'm not going to call the probation officer as an adverse witness to cross-examine him. I'm satisfied that this matter can be determined on the submission by – of us – that's us, the defendant – on the probation report, where matters are argued in the probation report. He doesn't ask to argue anymore. Your Honor, I'm sorry. I just noticed for the first time. I do not believe, Your Honor, that this is a true transcription. I believe that Mr. Garcia intended to argue future tense. And I apologize if this is the first time I've heard this. Let me stop you right there. Was there a motion to correct the reporter's transcript on appeal backed up by an affidavit of a precipient witness that an error had appeared in the transcript? No, Your Honor. There was not. Well, then, aren't we sort of bound by the transcript? You're saying he intended to do something that was subjective and perhaps very well thought out. But what Judge Reel found was that he said, our intent is to submit on what has been submitted. Your Honor, what – What you argued, right? With all due respect, Your Honors. To whom? To this Court, Your Honor. Mr. Phillips's attorney, Mr. Garcia, could not have been clearer that he intended to deny the allegations. At the first appearance, he argued Mr. Phillips intends to deny the allegations. This was set over for a denial. Again, at the second appearance, it was noted that he would argue that he was not in violation. At no time did anyone admit that he was in violation, Your Honor. Where do you find that he stood on his right to argue? What I see is that when Judge Reel said, and is there any legal cause why sentence should not now be imposed, Mr. Garcia said, instead of saying, Your Honor, we're not ready to get there yet, I'd like to argue my position as to why this probation report is not sufficient, he didn't say that. He said, no, Your Honor. Is the Court finding that Mr. – the Court – he's in violation, then Mr. Garcia, instead of saying, not so fast, Your Honor, we have – we'd like to argue the issue as to the probation sentence. He says, very well. There is no legal cause and we're prepared. Your Honor, in this particular courtroom in district court, making arguments after the Court has already made a finding is on pain of contempt. This is not a courtroom in which people are free to speak at length on whatever topics they choose to speak. This is a courtroom in which Mr. Garcia submitted at the first hearing that it is our intent to argue. And that's at 42. Except of record. We are going to submit on the letter and are prepared to just argue what we believe. He asked at that first hearing for an opportunity to argue. And what's also clear from the second hearing is that he did have arguments. When he was finally allowed to say something, he presented extensive arguments. As to remedy. Your Honor, I would submit that it is not to remedy. Those arguments went to the very character of what is asserted in the probation officer's letter. He contested each and every one of the probation officer's characterizations. When I think that what happened on July 28th is indicative. Mr. Phillips. I'm sorry. I didn't hear that last time. What happened on July 28th when he first attempted to reactivate his confinement condition by going to Seal Beach. Mr. Phillips, and the record reflects Mr. Phillips, lives in Riverside and Seal Beach is in Seal Beach. So he drove over 60 miles to report. When he got there, he was told that he would have to stay until 8 p.m. The record is clear that the district court's orders is that he stay until 6 p.m. He also submitted an argument that in the past he had been allowed to stay. The court order expected him to show up on time. The probation officer notes in her letter that she is the one who says that she sent a letter saying that he had to stay until 8 p.m.  You agree with me, Miss Chen, that the court's order that says he has to stay till 6 p.m. assumes that he's showing up on time when he's supposed to show up. And he showed up late. Your Honor, that is true. However, there's nowhere in the record that indicates that Seal Beach on its own decided that he should stay until 8 p.m. because he arrived. So if you were right, if he arrives at five minutes to six, he can leave at 6 p.m. In any case, it appears, at least from Mr. Garcia's submission, that it was Seal Beach that asked him to leave because they were not clear as to what time Mr. Phelps was supposed to stay. He was asked to leave. He was complying with, at that point, Seal Beach's order. He was asserting Judge Reel's order that he be allowed to leave at 6 p.m. I'm interested in your statement that there are some – something that I don't see in the record that in this courtroom – and I imagine you don't mean the courtroom, you mean in Judge Reel's court when Judge Reel is there – that any dispute by defense counsel or attempt to speak is going to be punished by contempt. And so, therefore, there's a feeling of oppression in the courtroom. Is that your point? I mean, I don't see that in the record. Your Honor, Judge Reel made almost no statements as to what he was, in fact, finding in this case. He made a very garbled statement, indeed. But he said the order is revoked. So he came out with that. And everybody knew what that meant, right? Yes. But he also said it was revoked based on agreements and admissions, agreements and admissions that were never made, Your Honor. And when – No, I believe there's a misunderstanding there. I believe that when counsel said we submit on what has been submitted and argued, the government took that to be, well, there's nothing to talk about here except remedy, and that's what Judge Reel took it to be. And when given the opportunity to come forward with some argument, when Judge Reel ritually asked, is there any reason why a sentence cannot now be imposed, that's the time to speak up and say, Your Honor, there hasn't been a finding, there hasn't been a submission that there's a violation here. There may have been a misunderstanding of our position. We're submitting on certain evidence, but we certainly want to argue that that is not sufficient. Are you telling me that that would have caused Mr. Garcia to be held in contempt? I don't mean literally in contempt, Your Honor. But in this courtroom, it is difficult to speak over the judge. It is, Your Honor. But it's not speaking over the judge when he asks a question. And is there any legal cause why a sentence should not now be imposed? He stops. At that point, Mr. Garcia, instead of saying, Yes, Your Honor, we have not submitted this issue on an admission basis or an agreement basis. We're submitting it on certain evidence. We wish to argue that that evidence is insufficient. Was there any reason why Mr. Garcia could not have stayed at that time? Well, Mr. Garcia does ask at that point, Is the court finding? Is the court finding that Mr. And the court says, He's in violation. And at that point, that is when Mr. Garcia does, in fact, argue. He says, Very well. There's no legal cause and we're prepared. And he argues then. And what does he argue? Everything he argues is in direct contradiction to what the probation officer's letter asserts. I notice that my time is up. Yeah. Why don't you sit down now and we'll give you a minute and rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Brian Hofstadt for the United States. With respect to defendant's due process argument regarding the opportunity to be heard, since the Supreme Court's decision in Morrissey, and this Court has adopted the analysis as well, the Supreme Court has looked at the fact that there are basically two steps to a supervised release revocation. The first involves the wholly retrospective factual question, whether the defendant is, in fact, in violation of the terms of supervised release. The second goes to what remedy is appropriate. This Court in its decision that I believe one of the parties or both of the parties cited in their briefs, the United States v. Pinju is instructive about when it is in a particular proceeding that generally certain facts become relevant to what step of the inquiry. In the Pinju decision, the defendant there, much like the defendant here, was required to serve a period of time in a mental health facility. And after being given two opportunities to do so, failed both times. And one of the things that that defendant wanted to argue and claim there was a due process violation for not being able to argue is the fact that she was unable to do so based on her mental health, which is very similar to the defendant's argument regarding blood pressure in this particular case. And what this Court noted in the Pinju decision is that the defendant's volition or ability to comply is relevant to a supervised release proceeding, but is relevant and I quote, it's something that it's one factor that a district court may consider in the second phase of the analysis, in that it goes to the remedy, not to whether or not there, in fact, was a violation. Kennedy. Counsel, aren't we going to have to send this back anyway to Judge Reel, maybe Judge Reel or some other judge, for his failure to make any particular findings as to, so that we can identify the basis on which he made a finding of a violation of supervised release? Pinju. I think, Your Honor, that we have sufficient findings as to whether or not there was a violation of supervised release based on the submission to the probation officer's report. Kennedy. Well, how do we know what portion of that report was accepted by Judge Reel as a basis for finding? We have evidence in the case. That's the report. And we have a one-line sentence by Judge Reel, there's a violation. But there's nothing in the transcripts that I could see, perhaps you could point it out to me, where Judge Reel goes through the report and says, I find that the statements by the probation officer that Mr. Phillips willfully refused to report or reported late or was trying to game us, which would be a perfectly reasonable deduction from the report, was so. I mean, there's nothing in the transcript which allows us to find that Judge Reel did anything but find a violation. And it may well be that he thought that this was a stipulated violation from the language of Judge Reel that there's an agreement. Point out to me where you can. Any portion of the transcript which shows that Judge Reel made a reasoned declaration as to what portions of the report constituted a violation. Okay. I agree with the Court at the outset that the district court's statements as to what it was doing are far from the model of clarity or whatever else is required. Let me take a step back as well and give you kind of my analysis as to in responding to your question. I think in terms of specifically where in the record that's something that's said, I think that, you know, the way that the government would urge this Court to look at it is that there are these two steps. There's the first step as to whether or not there's a violation. And I intend this to be a helpful interjection following along Judge Beah's line of questioning. I think you're not going to agree with Judge Reel on this point. As I read Judge Reel, he's interrupted, but the sentence continues on either side of the interruption. I'm on page 48 of the excerpt. Yes. Judge Reel says he's in violation on each of the provisions. I assume that means each of the provisions of his supervised release. Is it possible that he's in violation of each of the provisions? Are you content that he is? There was one violation. There was only one allegation in the petition for supervised release. That is the failure to comply with the consecutive 45-day, you know, 45 days of probation. But he doesn't say allegations. He says provisions. Right. And I don't have this in front of me in the excerpt of the record. At least I don't see it immediately in front of me what the supervised release required, but I assume they've got a whole bunch of things in there. And he says he's in violation of each one of them. That can't be, right? No, the only one that he was in violation of was the weekend prison sentence. That's correct. So not only is it sort of not very complete, it seems wrong. Well, as to that, yes. I mean, I would agree that, I mean, there's only one at issue here. So, I mean, and we're not contending that. He'd done 6 days, but he still had 39 to go. He still has 39 to go. And he wasn't showing up. And he was getting there late, and he was saying I've got to leave early, and he was. Right. The only thing that's in the record right now, if you look at excerpt of record page 57, the one thing that it does, the one thing that the district court does say, and he says it in the context of whether or not a self-surrender date is acceptable at the request of the defendant. He points out the fact that the, you know, that basically where he says, you know, the defendant had 140 over 90 the last time he had his blood pressure taken. Come on, please. I mean. And actually, I looked through the record to find out when he had a 140 over 90. Where is that in the record? I saw a whole bunch of really high numbers in there. I believe that the closest one that I found in the record, Your Honor, is on excerpt of record page 32. And there it's talking about his blood pressure resting, which is not 140 over 90. It's 140 over 98. It was on September 7th of 2004. And on what date was this hearing? This hearing was on November 8th of 2004, two months later. Yes. And it says resting 140, 98 to 150, 100. That is to say there's a range in there. Right, right. So if he's referring to that, he's misstating it. That appears to be correct, yes. I don't know. I looked through the record elsewhere, Your Honor. And then post-exercise, it's 220 over 140, 220 over 120. Right. Under any medical terminology, that's pretty high. That is pretty high. So for Judge Leal to say he had 140 over 90 the last time he had blood pressure taken, I'm not stupid. Well, I'm only going to address the 140 over 190 rather than I'm not stupid. Which he is clearly not stupid, but I'm not sure he's paying attention to the record in front of him. Again, I'm not sure whether there was some other report that he'd received from a probation officer or from the Bureau of Prisons. But, you know, this Court's correct. It's not in the record. And what's in the record is in conflict with what he just said. The record that we have before us does not does the – it's not in there, the 140 over 90, correct. But that provision at least seems to indicate the district court's belief that the defendant's blood pressure is not something that sufficiently warrants self-surrender date and at least tends to support the notion that the district court is buying into and believes that the probation officer's belief, which is set forth in her letter, that the defendant is using his blood pressure as an excuse and that there is some element of malingering there. That's about as good as it gets in terms of the record. Now, if I can argue and step back and just say that, you know, we would argue that because the – as to the question of whether there's a violation, here there's – all we have is a probation officer's statement. And that is, in fact, in the record. The defendant's pre-hearing submissions did not contest or did not put into issue at all the various reasons he didn't show up. The only evidence of that in the – the only statement of that in the record is the argument of counsel at the hearing. And we would argue that there really isn't an evidentiary question as to whether or not he's in violation, because all we have is a probation officer's statement. Even if we don't adopt what Judge Beyer had said earlier and say that, well, all the defendant's arguments are going toward the remedy, which is, in fact, what we believe in fact was happening in this case. There was a violation because the defendant did not comply with the conditions. He didn't show up. He didn't do that. So, therefore, we have the violation established. All the other argument that occurred is going to the sentence. It's much like a extraordinary health downward departure or, you know, three occurrences of aberrant behavior because I was late. I guess your answer to the question you were asked is where is the finding of violation, where is the finding of specific violations by Judge Real? There is none. As to the violation in the first place, there's just a statement. But as this Court said in the Cessna-Hernandez case, where there's no dispute as to the factual questions, the district court's finding itself is sufficient. And there's a need for specific findings when there's something – The fact that he throws a guy in jail is enough of a finding? No, the fact – He doesn't have to say any more? No, the fact that the district court here on the facts, there was no evidentiary dispute as to whether he's in violation. The dispute that occurred or the argument that occurred was about the appropriate sentence. And in this case, the district court sentenced the defendant within the 5 to 11-month range under Chapter 7 of the Guidelines. Typically, the district court is only required to establish what it's doing when it departs outside of the range. Wait a minute. There was a dispute as to a violation. That's exactly why Mr. Garcia said he denies it at the earlier hearing, and that's why it was set down for hearing at a later date. Had it been an admission, they could have proceeded to make a finding of a violation supervised release at the first hearing. When the word denial is used and Judge Reel says we'll get a date for denial, like denial is like a not-guilty plea. Not-guilty plea is not an admission. It may be I plead not guilty, and this is the stipulated evidence, right? And then we'll argue or not argue whether it's sufficient, but it's not an admission of a violation. Before I answer the question, if I use the word admission, I misspoke. All I meant to say was that, yes, the defendant denied. I agree the defendant denied that he committed the violation, but a person can plead not guilty, but based on the evidence that the government submits, the court can still find a violation over the defendant's denial. That's what I was getting at is the fact that he denied it. But there was a dispute here, unlike in the Hernandez case, because here there was an absolute denial that was put on for hearing. There was a mix-up. There was a misunderstanding. The record is very unclear. But there was a denial. There was a denial. We believe the district court found that the factual question of the violation was supported and that factual thing was finding was supported. But you're right. The court did not make findings as to the appropriate and did not resolve the dispute as to the dispute. And to the extent that there's any explicit finding of fact by the district judge, the only factual thing I can find that the district judge says is 140 over 90, and that's wrong. Is there any other factual finding or factual statement by the district judge in this record? No. There's no other factual statement. So the only factual statement we have is wrong. And all we would argue is it's not supported by this particular record. We're just arguing the fact. Well, what other record can we look at? Or what other record was he looking at? That I don't know. That I don't know. Oh, now, come on. Are you suggesting that he had some other secret record that didn't make it into the appellate record? No, no, no. I'm not suggesting that at all. I just don't know whether or not there were other federal prisons. The Court is correct. It's not in the record. And so, you know, there are no explicit findings resolving the questions about the appropriate remedy to be imposed. Lester, any further questions? And if we think we need to send this back for explicit findings, to whom should we send it? I think that the Court should – I don't think the finding that the three-part test that's been set forth has been met in this particular case. I think, obviously, the district court feels that – I mean, Judge Reel stated that he felt the defendant was in violation, but the defendant – but he didn't say anything that seemed to indicate that his mind was absolutely positively made up. There may have been misunderstandings. There may have been – but that doesn't indicate any sort of ongoing prejudice that would adhere to the defendant's. You say there's nothing here that indicates his mind was already made up? Did I hear you right? I said – well, I mean, as to – I mean, he clearly felt that there was a violation. Yeah. I mean, that shows up at the very beginning. Correct. Yeah. Okay. I think the tenor of the Court's questions makes it clear that we just don't know what happened below. We simply don't know. And Judge Reel did not make it clear. I'd like to draw the Court's attention to Excerpts of Record 14, which is Mr. Phillips's letter in which he explains to the Court that his last blood pressure reading was 160 over 110. So when Judge Fletcher raises the fact that the only factual finding that Judge Reel made happened to be an inaccurate factual finding, it also indicates that Judge Reel did not look at the defendant's submission. In the defendant's submission, he indicates that his blood pressure was 160 over 110. In the defendant's submission, he explains that he attempted each time to comply with each one of the judge's orders. And in this case, the judge's orders included for Mr. Phillips to get his blood pressure under control. Mr. Phillips provided extensive information to the Court as to the fact that his blood pressure was not under control. Do we have now this 160 over 110 refers to a medical appointment on October 21, 2004. Do we have any evidence of that blood pressure reading on that occasion except for this letter? Your Honor, I think that that letter is all we have. Yeah. Okay. In any case, Your Honor, what we don't know in this case is whether Judge Reel did believe that Mr. Phillips was gaming the system. Did he show up? Yes, he did show up. He showed up late, but he lived 60 miles away. Sixty or sixteen? Sixty. Six zero, Your Honor. Did he – was he gaming the system and taking advantage of his high blood pressure? We know that he wasn't doing that. He was in the emergency room on September 7th with 190 over 93. In this case, we have a judge that had his mind made up. This individual was in violation. He wasn't going to hear arguments. He was going to find him in violation based on his admissions and his agreement – admissions and agreement that he never made. Well, the question on remand as to whether it goes back to Judge Reel is not whether Judge Reel had his mind made up by the somewhat unclear submission of the evidence and the proceedings that happened with Mr. Garcia not demanding to argue the matter. The question is, does he have his mind made up in such a way that we should send it to another judge rather than Judge Reel? What do you think about that? Your Honor, I think that he had his mind made up in such a way that this matter should be sent back to a judge other than Judge Reel. The factors are, one, was he so – he was so adamant in his refusal, in this case, he wasn't even going to allow there to be any hearing on the denial, that Judge Reel could put out of his mind that this Court found that he made – he violated Mr. Phillips based on admission that Mr. Phillips never made. If this Court were to reverse and remand and say, Judge Reel, you made no findings and the only finding you made was not supported by the record, I would submit that this is just like Ferguson. This is not a case where Judge Reel could put out of his mind the findings that he made, the inaccurate findings that he made, and the fact that he did not give Mr. Phillips a hearing. That's all. Suppose we were to remand and say, Judge Reel, you didn't make any findings as to any of the statements in the probation report on which the case was submitted. There was no waiver of argument. Allow the defendant to argue what portions of the probation report are incorrect and make such findings as are necessary if you find that there's a violation. What would be wrong with that? Your Honor, in this particular case, Mr. Garcia asked to make argument. Judge Reel refused to even allow a hearing. The second prong is whether the appearance of justice would be preserved by a reassignment. Well, the appearance of justice, like many other things, is in the eye of the beholder, right? That's true. But in the case in which a defendant denies allegations, a hearing is set over for a denial. And when he attempts to deny it, the court overrules and says, we're finding you in violation based on your admissions and your agreement. I think we've been over that. Can you just remind me, how long was he sentenced? Eleven months. Eleven months, and how long has he served? Five months, Your Honor. So he has six months left to run on that. Yes, six months. His release date, our last check, was October 5th. Thanks very much. Thanks, both sides, for your argument. The case of United States v. Phillips is now submitted for decision.
judges: T.G. Nelson, W. Fletcher, Bea